UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SANJAY H. PATEL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
| VS. | ) | |
| | ) | 3:04-CV-0398-G |
| CONDOLEEZZA RICE, in her official | ) | |
| capacity as Secretary of State, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND ORDER

Commencing September 19, 2005, a three-day bench trial was held in this case. After review and consideration of all the evidence, the entire record, and the arguments of counsel, the court decides that the plaintiff Sanjay H. Patel ("Patel" or "the plaintiff") has not sustained his burden of proving that he is a United States citizen by birth and that his complaint for a declaratory judgment must therefore be denied.[1] The reasons for this decision are set forth below.

---

[1] This memorandum opinion constitutes the findings of fact and conclusions of law required by Rule 52(a), F.R. Civ. P.

## I. BACKGROUND

Patel claims that he is an American citizen by virtue of having been born in the United States on September 4, 1973, in Chicago, Illinois, and that the Secretary of State has, through her agents at the United States Department of State, failed to recognize him as a United States citizen by birth by denying his application for replacement of a lost United States passport. In his sole claim for relief, Patel seeks a declaratory judgment, pursuant to 8 U.S.C. § 1503(a), that he is a United States citizen by birth and, as such, is entitled to a United States passport.

Condoleezza Rice, in her official capacity as Secretary of State ("Rice" or "the secretary" or "the defendant"), avers that Patel has failed to meet his burden of proof that he was in fact born in the United States on September 4, 1973, in Chicago, Illinois. The secretary maintains that Patel's August 10, 1995, application for a United States passport was approved in error and a passport was issued to Patel in violation of departmental passport guidance. The secretary further contends that Patel's complaint for declaratory judgment should be denied for failure to meet his burden of proving, by a preponderance of the evidence, that he is a United States citizen by birth.

The parties have stipulated to the following facts in this case. Patel's father, Harikrushna S. Patel ("Harikrushna"), a native of India, traveled to the United States on August 31, 1973. Joint Pretrial Order, filed September 7, 2005, at 2.

- 2 -

Harikrushna's wife did not travel with him when he came to the United States in August, 1973. *Id*. In 1981, Harikrushna became a naturalized United States citizen. *Id*. DNA tests conducted on the plaintiff and Harikrushna in 2005 confirm that the plaintiff is Harikrushna's biological son. *Id*. at 3. Also, the plaintiff was married in the United States and has a daughter, Sidhdhi Patel, who was born in the United States and is a United States citizen. *Id*.

In 1994, the plaintiff applied to the Illinois Department of Public Health, Division of Vital Records, for a delayed birth certificate. *Id*. On November 28, 1994, a delayed birth certificate was issued to him by the State of Illinois. *Id*. On August 10, 1995, the plaintiff submitted an application for a United States passport based upon United States citizenship by birth. *Id*. In support of his application, Patel submitted his State of Illinois delayed birth certificate, an affidavit of his father, and copies of 1973-1974 medical records from the Chicago Department of Health. *Id*. The State Department issued United States passport number 101963556 to the plaintiff on November 3, 1995. *Id*.

The plaintiff wrote a letter to the passport office, dated February 5, 1996, stating that he had lost his passport. *Id*. On February 6, 1996, the plaintiff applied to the Houston passport office for a new passport. *Id*. At that time, he submitted a form entitled "Statement Regarding Lost or Stolen Passport" along with other documentation. *Id*. The passport office requested additional evidence of the

- 3 -

circumstances of his birth.  *Id.* at 4.  On February 8, 1996, the plaintiff withdrew his

application for a new passport in order to gather additional evidence of his United

States birth.  *Id.*

By letter dated March 3, 1996, the plaintiff provided additional documents to

the passport office, but did not submit a new application for a passport.  *Id.*  On

December 27, 2001, the plaintiff submitted a new application for a passport to the

passport office in Boston, Massachusetts.  *Id.*  This application was accompanied by

documents.  *Id.*  On January 2, 2003, the plaintiff submitted another application for a

new passport, this time to the Chicago, Illinois, passport office.  *Id.*  This application

was accompanied by documents.

The plaintiff filed this suit on February 24, 2004, seeking a judicial declaration

that he is a United States citizen by birth and entitled to a passport.  *Id.*  On

September 19, 2005, a three-day bench trial commenced.  On October 14, 2005,

both parties, in compliance with this court's order, submitted post-trial briefs.

## II.  ANALYSIS

### A.  *Legal Standards - 8 U.S.C. § 1503*

This is a declaratory judgment action brought pursuant to 8 U.S.C. § 1503(a).

Title 8 U.S.C. § 1503 provides:

> If any person who is within the United States claims a
> right or privilege as a national of the United States and is
> denied such right or privilege by any department or
> independent agency, or official thereof, upon the ground

that he is not a national of the United States, such person may institute an action under the provisions of [28 U.S.C § 2201] against the head of such department or independent agency for a judgment declaring him to be a national of the United States, . . .

8 U.S.C. § 1503(a).  This court has power to grant the relief sought under 8 U.S.C.

§ 1503 and 28 U.S.C. § 2201.

In a case properly brought under 8 U.S.C. § 1503, the court must make a *de novo* determination whether the plaintiff is a national of the United States.  *Richards v. Secretary of State*, 752 F.2d 1413, 1417 (9th Cir. 1985); *Delmore v. Brownell*, 135 F. Supp. 470, 473 (D.N. J. 1955), *aff'd*, 236 F.2d 598 (3d Cir. 1956).  The plaintiff bears the burden of establishing, by a preponderance of the evidence, that he is a United States national.  *Reyes v. Neely*, 264 F.2d 673, 674-75 (5th Cir. 1959); *Liacakos v. Kennedy*, 195 F. Supp. 630, 631 (D.D.C. 1961).[2]

B.  *Patel's Arguments*

Patel argues that he has established a *prima facie* case of citizenship in two ways, each independently sufficient.  First, he urges that the government's issuance to him of a passport in 1995 is *prima facie* evidence of citizenship.  Post-Trial Brief of

---

[2]    Patel argues that he presented a *prima facie* case, thereby shifting to the government the burden of producing evidence that he was born outside the United States or discrediting all of his evidence that he was born in the United States.  Post-Trial Brief of Sanjay H. Patel at 2, 10-11, 21.  The case law from the Fifth Circuit does not discuss such burden-shifting, and *Reyes v. Neely*, 264 F.2d 673, 675 (5th Cir. 1959), seems to reject it.  The court need not decide whether such burden-shifting occurs, since the parties agree that Patel always retains the burden of persuasion, and the court concludes that Patel has not satisfied that burden.

- 5 -

Plaintiff Sanjay H. Patel ("Plaintiff's Post Trial Brief") at 3.  Second, he argues that

he produced extensive evidence that he was born in Chicago, Illinois.  *Id.* at 4.

> 1.  Does the Issuance of a United States Passport Constitute
> *Prima Facie* Evidence of United States Citizenship?

Patel argues, citing numerous circuit court cases, that proof of a prior

determination of citizenship by the government constitutes *prima facie* evidence of

citizenship.  See *e.g.*, *Lim v. Mitchell*, 431 F.2d 197, 202 (9th Cir. 1970) (certificate of

identity as a citizen by Board of Special Inquiry established a *prima facie* case of

citizenship; issuance of a U.S. passport "acknowledg[ed] his status as an American

citizen."); *Delmore v. Brownell*, 236 F.2d 598, 600 (3rd Cir. 1956) (letter from

Commissioner of Immigration that the plaintiff "may properly be regarded a native

and citizen of the United States" established the plaintiff's *prima facie* case); *McGrath*

*v. Chung Young*, 188 F.2d 975, 977 (9th Cir. 1951) (prior determination by Board of

Special Inquiry of Immigration Service that plaintiff was a citizen established the

plaintiff's *prima facie* case); *Choy Yuen Chan v. United States*, 30 F.2d 516, 517 (9th

Cir. 1929)(same); *Ah Kong v. Dulles*, 130 F. Supp. 546, 547 (D.N.J. 1955) (certificate

of identity issued by Commissioner of Immigration Service established *prima facie* case

which satisfied the plaintiff's burden of proof).  Patel asserts that the State

Department's issuance to him of passport number 101963556 ("the passport") on

November 3, 1995, constitutes *prima facie* evidence of his citizenship.  See *Delmore*,

135 F. Supp. at 474.

- 6 -

Patel's argument, however, is not supported by the facts in this case.  The

United States Code provides that a passport "during its period of validity" is proof of

citizenship to the same extent as a certificate of naturalization or citizenship.  22

U.S.C. § 2705.  In this case, Patel's United States passport, issued on November 3,

1995, was not valid at the time of trial.  In pertinent part, the code of federal

regulations provides, in a section entitled "Validity of passports":

> (h)  Invalidity.  A United States passport is invalid
> whenever:
>
> > (1)  The passport has been formally revoked
> > by the [State] Department, or
> >
> > (2)  The [State] Department has registered a
> > passport reported either in writing or by
> > telephone to the Department of State, or in
> > writing to a U.S. passport agency or to a
> > diplomatic or consular post abroad as lost or
> > stolen.

22 C.F.R. § 51.4 (h).

The passport became invalid on the date Patel reported it lost.  The parties

stipulated that Patel wrote a letter to the passport office, dated February 5, 1996,

stating that he had lost his passport.  Joint Pretrial Order at 3; Defense Exhibit 12.

Therefore, Patel's passport became invalid on February 5, 1996, the date Patel

reported it lost.  *See* 22 C.F.R. § 51.4(h)(2).

Even if this passport had not been lost, it is doubtful whether issuance of the

passport, by itself, would be sufficient to satisfy Patel's burden of persuasion.  See

*Reyes*, 264 F.2d at 675 (the plaintiff "stands almost entirely on the proposition that the certificate of citizenship issued by the Immigration Department in effect conferred upon him citizenship which gave rise to the presumption that the plaintiff was a citizen and placed upon the defendant a burden equivalent to that imposed in a denaturalization proceeding.  While . . . *Delmore v. Brownell*, [236 F.2d 598 (3d Cir. 1956)], . . . does lend some support to this view, the opinion itself recognizes that it is contrary to . . . *Mah Toi v. Brownell*, [219 F.2d 642 (9th Cir.), *cert. denied*, 350 U.S. 823 (1955)], cited by us with approval in *DeVargas v. Brownell*, [251 F.2d 869 (5th Cir. 1958)], and with which we wholly agree.").

### 2.  Has Patel Presented Proof by a Preponderance of the Evidence That He Was Born in Chicago, Illinois?

Patel argues that the totality of the evidence of his birth in the United States constitutes a *prima facie* case of United States citizenship.  Patel's argument is generally based on the following pieces of evidence:  1) the November 28, 1994, Illinois delayed record of birth; 2) the testimony of the plaintiff's father, Harikrushna Patel; 3) the testimony of Mirza Jesani and Ghanshyam Patel; and 4) the records from the Chicago Department of Public Health Uptown Clinic.

### a.  Delayed Record of Birth

As stated in the memorandum opinion and order denying the defendant's motion for summary judgment, this court must determine the evidentiary value to give Patel's delayed birth certificate.  Memorandum Opinion and Order, filed July 25,

2005, at 7.  To determine the appropriate evidentiary weight, this court must look to the evidence used to support Patel's application for a delayed record of birth.  *Id.* Patel's delayed birth certificate was apparently issued on the basis of two documents. *See* Defendant's Exhibit 1.  The first document cited as supporting evidence in the delayed birth certificate is a school record from the Shree Vadyanager High School in Ahmedabad, India.  *Id.*  The second document cited as supporting evidence is the affidavit of Dr. Dabyabhai S. Patel dated March 11, 1994.  *Id.*  Neither of these documents was admitted at trial.[3]  Accordingly, because the plaintiff failed to produce the documents used to obtain his delayed record of birth, this court will give no evidentiary weight to Patel's delayed birth certificate.

b.  Testimony of Harikrushna Patel

This court finds that Harikrushna Patel's testimony is not credible. Harikrushna has prior convictions for conspiracy, arson, mail fraud, and tampering with a witness.  Transcript of Trial Record at 168.  Additionally, after he was convicted, Harikrushna fled to India and failed to report for sentencing.  *Id.* at 163-64.

---

[3]       On September 9, 2005, Magistrate Judge Kaplan verbally ordered that the original documents which comprise the plaintiff's exhibits 11, 14-16, and 18 must be produced to the defendant by 4:00 p.m. on September 9, 2005.  He further ordered that the original of any such exhibit not so produced could not be offered at the trial of the case.  This order was reduced to writing and signed on September 14, 2005.  The plaintiff failed to produce the originals of these documents, and they were consequently not admitted at trial.  Transcript of Trial Record at 4-10.

Harikrushna's willingness to play fast and loose with the truth was evident at numerous points in his trial testimony.  First, when Harikrushna was asked about his employment history in a deposition, he replied that he was "employed" by the Bureau of Prisons in Fort Worth doing data entry work.  *Id.* at 164.  In reality, of course, Harikrushna was in the custody of the Bureau of Prisons serving a sentence for the convictions set forth above.  Then, at trial, Harikrushna attempted to justify this misrepresentation by asserting that he was employed by the Bureau and made a good salary.  *Id.* at 165-66.  In fact, Harikrushna was assigned to work in Federal Prison Industries (also known by the trade name UNICOR) and earned no more than between $0.23/hr to $1.15/hr.  Defendant's Exhibit 41 ¶¶ 3, 4.

Second, Harikrushna testified that Devyani Parmar, the person claimed to be the plaintiff's mother, did not have a passport in 1974.  Transcript of Trial Record at 249.  Just minutes earlier, however, Harikrushna testified that he knew Devyani Parmar's birth date because he "had occasion to look at her passport."  *Id.* at 247.

Third, Harikrushna knowingly misrepresented to the Immigration and Naturalization Service, when he signed his Application for Naturalization on December 11, 1980, that he had no children.  *Id.* at 208-09.  This misrepresentation was on a sworn document.  *Id.* at 209.  The court finds that Harikrushna Patel's testimony is not worthy of credence.

c.  Testimony of Mirza Jesani and Ghanshyam Patel

The plaintiff argues that the testimony of Dr. Mirza Jesani ("Jesani") and

Ghanshyam Patel ("Ghanshyam") establishes the presence of the plaintiff's mother in

Chicago at the time of the plaintiff's birth, that the plaintiff's mother was pregnant at

the time, and that the two of them saw the plaintiff as a newborn in Chicago shortly

after the plaintiff's birth.  Plaintiff's Post-Trial Brief at 8.  The plaintiff asserts that

Jesani's and Ghanshyam's testimony is particularly significant because of their

disinterestedness, their clear recall of events in 1973, and the government's failure to

discredit their testimony on cross examination.  *Id.*

This court disagrees with the plaintiff's assertions regarding Jesani's testimony.

First, Jesani is an interested witness.  Such testimony is "to be taken with a grain of

salt."  *De Vargas v. Brownell*, 251 F.2d 869, 871 (5th Cir. 1958).  He has been a

family friend of Harikrushna, the plaintiff's father, for many years.  Transcript of

Trial Record at 121-23.  Although Jesani testified that his friendship with

Harikrushna did not affect his testimony, he acknowledged that he is a family friend

trying to help Harikrushna in this matter.  *Id*. at 121-22.  Second, Jesani does not

have a clear recollection of the events in 1973.  He admitted that his memory of

events in the 1970's is now, understandably, somewhat vague.  *Id*. at 115.  Third, the

government elicited damaging admissions from Jesani on cross examination.

Specifically, Jesani agreed that his belief that the plaintiff is the infant he saw in 1973

is based solely on Harikrushna's statements to him.  *Id.* at 116-17.  Jesani also

conceded that his belief that the pregnant woman he saw in 1973 was the biological

mother of the plaintiff is likewise founded solely on Harikrushna's statements to him.

*Id.*  As stated above, Harikrushna's testimony is not worthy of belief.  To the extent

Jesani's testimony relies on Harikrushna's statements, it must be viewed skeptically

and can be given little weight.[4]

For similar reasons, the court is not persuaded by the plaintiff's arguments

regarding Ghanshyam's testimony.  First, Ghanshyam is an interested witness.  He

testified that Harikrushna is a "long good friend."  *Id.* at 308.  While Ghanshyam did

appear to have a reasonably clear recollection of the events in 1973, the government

was able to discredit his testimony on cross examination.  Ghanshyam testified that

he has not seen the plaintiff since 1974.  *Id.*  Accordingly, he cannot identify Patel

from his own personal knowledge as the baby he saw in 1974.  Because the court

finds that the testimony of Harikrushna is not credible, Ghanshyam's testimony --

based on Harikrushna's statements to him that the baby Ghanshyam saw in 1974 is

the same person as Patel -- is not credible either.

This court finds that the testimony of both Jesani and Ghanshyam relies on

statements made to them by Harikrushna.  Because Harikrushna is not credible, the

---

[4]     The only testimony provided by Jesani probative of whether Patel was
born in the United States is that Jesani saw Patel in Chicago just after his birth in
1973.  By Jesani's own admission, however, he relied on Harikrushna's assurance that
Patel is the baby Jesani saw in 1973.  Transcript of Trial Record at 117.

court finds that the testimony of Jesani and Ghanshyam -- that they saw the plaintiff in the United States in 1973 or 1974 -- cannot be credited either.

> d.  Records from the Chicago Department of Health Uptown Clinic

In support of the plaintiff's passport applications, Patel submitted medical records from the Chicago Department of Health Uptown Clinic ("Uptown Clinic"). *See* Plaintiff's Exhibit 13 at 5-7, 17, 19-31, 39, 43.  Additionally, the plaintiff offered these medical records into evidence in his case-in-chief as Exhibits 8 and 19.  *See* Plaintiff's Exhibits 8, 19.  These records purport to be the plaintiff's initial physical examination record, patient name plate, initial problem list and plan record, patient program of care status log, immunization records, pediatric health maintenance flowsheet, Subjective Objective Assessment Plan ("SOAP") sheets, medication sheet, pediatric health history record, child and family medical history record, self administered environmental history record, problem list record, patient identification record financial data sheet, payment record, school immunization certificate, boys:  2 to 18 years physical grown NCHS percentiles chart, boys: prepubescent physical growth NCHS percentiles chart, boys: birth to 36 months physical growth NCHS percentiles chart, and a copy of the Uptown Clinic medical records folder.  Generally, these documents support the assertion that the plaintiff was born in Chicago, Illinois, on September 4, 1973.  At first glance, the records appear to have certain indicia of reliability.  They appear to have been created close in time to the alleged event in

question, *viz.*, the plaintiff's birth.  Also, they appear to have been created by a disinterested party, the Chicago Department of Health Uptown Clinic .

### C.  *The Government's Evidence*

The government discredited these medical records, however, through the testimony of Sharon Buffalo ("Buffalo"), the Administrator for the Chicago Department of Health.  Transcript of Trial Record at 413.  This court finds Buffalo credible.  Buffalo is a disinterested party.  She has personal knowledge with regard to the medical records at the Uptown Clinic, and she has worked for the Chicago Department of Health for over twenty-seven years, and for the Uptown Clinic since "1995, [or] 1996."  *Id.* at 414.  These records were discredited in several convincing ways.

First, the Uptown Clinic records that Patel offered as evidence of his 1973 birth did not exist in 1973.  The "Chicago Department of Health-Immunization Record," a document submitted by Patel to the State Department as proving that he received immunizations in the United States as early as November 18, 1973, *see* Plaintiff's Exhibits 8 (at 27A), 13 (at 6), 19 (at 5), was not used by the Chicago Department of Health prior to 1993.  Transcript of Trial Record at 426-27, 465, 521.  Moreover, the manner in which the plaintiff's "Chicago Department of Public Health - Immunization Record" was completed is not consistent with the Uptown Clinic procedure for completion of that form.  *Id.* at 462-64, 497-98.  The signature of the

medical provider is not correctly placed and the signatures shown on the form are unknown to the Uptown Clinic as the signature of any physician who has ever worked at the Uptown Clinic. *Id.* at 434-35, 447-49.

Second, the "boys: birth to 36 months physical growth NCHS percentiles" chart used by Patel to support his claim was not available from Ross Laboratories until 1976, three years after Patel's alleged birth, and could not have been used to record growth information for Patel. See *Id.* at 430-31; Plaintiff's Exhibit 19 at 7.

Third, the "Chicago Department of Public Health Patient Identification Record Financial Data Sheet," Plaintiff's Exhibit 8 at 17, contains an inquiry about "MPE Info." "MPE" refers to "Medicaid Program Eligibility," a state program which did not exist in Illinois before April 1, 1990. This form thus could not have been completed on February 3, 1974, as Harikrushna testified. Transcript of Trial Record at 433-34, 527-28.

Fourth, the plaintiff represented that his Exhibit 13, pp. 5-7, 17, 19-31, 39, Uptown Clinic patient records with the name "Sanjay Patel" and the registration number of "078262," were his records with a patient number given to him in 1973. Transcript of Trial Record at 59-60, 91. These representations, however, do not withstand scrutiny. The Uptown Clinic Log for registered patients established that May 2, 1978, was the first time the name "Sanjay Patel" and the number "078262" were used as a patient registration number. *Id.* at 416-18, 428-29, 457, 461-62. If

the plaintiff had been a registered patient of the Uptown Clinic  in 1973-1974, his registration number would have been significantly lower.  *Id.* at 429.

Fifth, Patel offered the "Pediatric Health Maintenance Flow Sheet" as one of his Uptown Clinic medical records.  Plaintiff's Exhibit 19 at 23; Defendant's Exhibit 30 at 23.  However, Buffalo confirmed that the document shows that it did not come into use prior to 1993.  *Id.* at 435-36, 492-93.

Sixth, Patel offered the "Immunization Record" as an Uptown Clinic record created for him.  Plaintiff's Exhibit 20; Defendant's Exhibit 33.  However, that "Immunization Record" is the 1992 version, not one used in 1973.  Transcript of Trial Record at 442-44, 500-01.  Buffalo testified that Patel's exhibit, if it had been created by the Uptown Clinic, would have had immunization information recorded on the reverse side by a nurse.  *Id.*

The plaintiff has failed to demonstrate that the Uptown Clinic records, which purport to show that he was treated there as an infant in 1973-1974, are genuine and worthy of belief.

## III.  <u>CONCLUSION</u>

For the above reasons, the court concludes that the government has discredited the plaintiff's evidence, and that the plaintiff has failed to meet his overall burden of proving, by a preponderance of the evidence, that he was born in the United States.

- 16 -

Judgment will be entered denying the plaintiff's claim for declaratory relief.

Costs will be taxed against the plaintiff.

**SO ORDERED**.

November 15, 2005.

_____

A. JOE FISH
CHIEF JUDGE